UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
JOSEPH DIMARIA and FRANK
DIMARIA,

                Plaintiffs,

-against-

ACCREDITED HOME LENDERS, INC.;
SELECT PORTFOLIO SERVICING,
INC.; MORTGAGE ELECTRONIC
RECORDING SYSTEMS, INC.;
DEUTSCHE BANK NATIONAL TRUST
COMPANY; JOHN DOES 1-5,

                Defendants.

---------------------------------------------------x

**MEMORANDUM AND ORDER**

14-CV-6292 (FB)(MDG)

*Appearances:*
*For the Plaintiffs:*
ADAM MICHAEL SWANSON
SHANE MATTHEW BIFFAR
Blank Rome LLP
405 Lexington Ave.
New York, NY 10174

*For the Defendants:*
BRIAN MCCAFFREY
88-18 Sutphin Blvd.
Jamaica, NY 11435

**BLOCK, Senior District Judge:**

Joseph and Frank DiMaria bring this action against Accredited Home Lenders, Inc. ("Accredited"), Select Portfolio Servicing, Inc. ("Select"), Mortgage Electronic Recording Systems, Inc. ("MERS"), and Deutsche Bank National Trust Company ("Deutsche Bank"). They seek a declaration of quiet title under New York law, and damages under

the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"). The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is granted.

I

On September 22, 2006, the DiMarias obtained a $600,000 loan from Accredited to purchase a property in Whitestone, New York. Accredited originally held the promissory note, which was secured by a mortgage on the property.

The mortgage agreement provided that "for purposes of recording this mortgage, MERS is the mortgagee of record," although Accredited retained the substantive rights of the mortgagee. Swanson Aff., Ex. B at 3. MERS provides mortgage-recording services to its member financial institutions, which agree to note MERS as the mortgagee of record on their agreements. This helps facilitate transfers of mortgages between member institutions because the transferred mortgage need not be re-recorded with the county clerk. *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96 (2006).

Eventually, Accredited sold its rights under the DiMarias' promissory note to Deutsche Bank. Because Deutsche Bank is a MERS member, the promissory note was transferred to Deutsche Bank without having to re-record the mortgage to note Deutsche Bank as the mortgagee. The promissory note is now held in a Real Estate Mortgage Investment Conduit ("the Trust"), which is governed by a Pooling and Servicing

2

Agreement to which the DiMarias are not parties. Through the Trust, Deutsche Bank markets mortgages—including the DiMarias'—"en masse" as components of a securitized investment vehicle. Complaint ¶ 43.

The DiMarias acknowledge the validity of the promissory note and mortgage at the time the agreement was first made; however, they complain that because of the transfer and securitization of their mortgage, they are unable to determine who the current owner of the note and mortgage is.

## II

The DiMarias seek a declaration of quiet title under New York law—which would terminate their obligation to make any future mortgage payments—for three reasons: (1) by making MERS the mortgagee of record but retaining ownership of the promissory note, Accredited rendered the note unsecured by the mortgage, (2) the use of MERS to record the mortgage clouded the property's title and rendered any transfer of the mortgage unenforceable, and (3) Deutsche Bank's inclusion of the mortgage in the Trust voided the mortgage.

### A

First, the fact that MERS—not Accredited—was the mortgagee of record does not render the note unsecured. It is longstanding New York law that a mortgage cannot be separated from a promissory note it secures. *Merritt v. Bartholick*, 36 N.Y. 44 (1867)

("The security cannot be separated from the debt and exist independently of it."). Since *Merritt*, this rule has been applied "faithfully, and consistently . . . by the Courts of the State of New York." *Ruiz v. MERS*, 15 N.Y.S.3d 376, 377 (2d Dep't 2015).

In *Ruiz*, the plaintiff claimed, as the DiMarias do here, "that the naming of MERS as the mortgagee, even though [the bank] was the payee designated on the note," rendered the mortgage "null and void." *Id.* The Second Department rejected this claim because of the longstanding rule from *Merritt*. *Id.* Likewise, the DiMarias' theory that naming MERS as the mortgagee separated the mortgage from the promissory note fails.

B

Second, the practice of designating MERS as the mortgagee of record does not cloud title under New York law. The New York Court of Appeals has held that despite not having an interest in a loan, MERS can validly record a mortgage. *Romaine*, 8 N.Y.3d at 97. It has also upheld the standing of an assignee to foreclose on a mortgage despite MERS acting as nominee. *See Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 359, 361 (2015). Additionally, the DiMarias expressly agreed that MERS would be the mortgagee of record, a fact the Second Department found to support MERS's standing to bring a foreclosure action. *MERS v. Coakley*, 838 N.Y.S.2d 622, 623 (2d Dep't 2007). It is thus clear under New York law that the recording and transferring of mortgages through MERS is a proper and acceptable method for doing so. Accordingly, the DiMarias' theory that MERS's designation as the nominee clouds the property's title fails as a matter of

4

law.

## C

Finally, the DiMarias allege that the defendants transferred the mortgage into the Trust in violation of the Pooling and Servicing Agreement, rendering the Mortgage unenforceable. The defendants argue that the DiMarias lack standing to advance this claim, and thus, the Court lacks subject matter jurisdiction to address it.

In *Rajamin v. Deutsche Bank*, the plaintiffs brought claims akin to the ones advanced by the DiMarias here. 757 F.3d 79, 82 (2d Cir. 2014). They sued Deutsche Bank for securitizing their mortgage and asserted that it did not validly acquire their loans because the Pooling and Service Agreement was not complied with. *Id.* at 87. The plaintiffs complained they suffered damage with every mortgage payment made because they believed the payments were not going to a proper party. *Id.* at 85. However, because the plaintiffs "acknowledge[d] that they took out the loans . . . and were obligated to repay them, with interest; and they ha[d] not pleaded or otherwise suggested that they ever paid defendants more than the amounts due, or that they ever received a bill or demand from any entity other than defendants," the Second Circuit held that the plaitiffs had not "allege[d] injuries sufficient to show constitutional standing." *Id.* at 85-86. The Second Circuit also rejected the plaintiffs' attempt to enforce the Pooling and Service Agreement because they were not parties or intended beneficiaries of the agreement, and thus lacked standing to do so. *Id.* at 87.

The DiMarias complain that the transfer of the mortgage to the trust makes it such that they do not know what entity holds their mortgage and receives their payments. However, just as the plaintiffs in *Rajamin*, the DiMarias have not alleged that they have been required, or even asked, to make any payment beyond what they originally agreed in the mortgage agreement. Moreover, because the DiMarias are not parties or intended beneficiaries of the Pooling and Service Agreement, they lack standing to enforce it.

The DiMarias do not attempt to distinguish *Rajamin*, but instead "ask this Court to consider the doctrine of estoppel in its many forms." Pl.'s Opp., at 9. But the DiMarias provide no citation or clarification, and it is thus unclear what they would have this Court consider, other than the purportedly multifarious nature of estoppel.

## III

The defendants provided extensive—and persuasive—briefing on why the DiMarias' claims under RESPA and TILA fail as a matter of law; but the DiMarias did not respond to their arguments nor advance other theories by which these claims should survive. Accordingly, the Court deems them abandoned. *See Raffaele v. City of New York*, 144 F. Supp. 3d 365, 373 n.2 (E.D.N.Y. 2015) (concluding undefended claims were abandoned because plaintiff failed to oppose motion to dismiss); *cf. Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

***

The motion to dismiss is GRANTED.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 27, 2016